**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**DAVID AND CAROLYN NYREN,**

**Plaintiffs,**                                    Civil Action: _____

**v.**

**TYPTAP INSURANCE COMPANY, INC.,**

 **Defendant,**

_____/

## COMPLAINT

COMES NOW THE Plaintiffs, **DAVID AND CAROLYN NYREN,** ("Plaintiff" or "Insured"),

by and through undersigned counsel, who file this Complaint, with all allegations made upon

present information and belief, against Defendant, **TYPTAP INSURANCE COMPANY,**

**INC.,** ("Defendant" or "Insurer"), on the grounds set forth below:

## JURISDICTION

1. This action arises under the National Flood Insurance Act, as amended, 82 Stat. 582, 42

   U.S.C. Section 4001, et seq., pursuant to the insurance contract issued to the Plaintiff by

   Defendant, as hereinafter more fully appears. This action, having arisen under an applicable

   federal statute, namely 42 U.S.C. Section 4072, requires the application of federal law

   pursuant to the general federal jurisdiction provisions of 28 U.S.C. Section 1331.

## VENUE

2. The property made the basis of this action is located at 308 Turtle Hatch Road Naples, FL 34103 (hereinafter referred to as the "Insured Property"). The insured property is situated in the Middle District of Florida, Fort Myers Division, and venue is proper in this Court pursuant to 42 U.S.C. Section 4072 and 44 C.F.R. Pt. 61, App. A(1), Article VII(R).

## PARTIES

3. Plaintiffs ("Plaintiff" or "Insured"), **DAVID AND CAROLYN NYREN**, was, and still is, the owner of the Insured Property at all times material to the allegations set forth in the Complaint.

4. Defendant, **TYPTAP INSURANCE COMPANY,** ("Defendant" or "Insurer"), was and is a private flood insurance company which is qualified to do business in the State of Florida. Defendant issued a Private Flood Insurance Policy (PFIP) to the Plaintiff. Pursuant to 44 C.F.R. Section 62.23(d) and (i)(6), Defendant is responsible for arranging the adjustment, settlement, payment, and defense of all claims arising under the Policy, including this one.

## FACTUAL ALLEGATIONS

5. Defendant issued an insurance policy to Plaintiff, namely, Policy No. 12-1057514-02 ("Policy"), whereby Defendant agreed to pay the Plaintiff for direct physical loss to the Insured Property caused by or from a "flood" as defined by the Policy. (A true and correct copy of the Policy is attached herein as **Exhibit "A"**).

6. Plaintiff dutifully paid the premiums charged by Defendant for the coverages afforded pursuant to the terms of the Policy and the Policy was in full force effect on the date of loss.

7. On or about September 28, 2022, the date of loss, the aforementioned Insured Property sustained damage as a result of a covered peril, namely flooding, from Hurricane Ian, which caused substantial property damage and further insured losses.

8. The purportedly covered damages were thoroughly documented by the experts retained by the Plaintiff, with supporting documentation, including specifications of the damaged dwelling and detailed, accurate repair estimates, were submitted to Defendant.

9. Plaintiff submitted a claim, Defendant acknowledged the claim, opened coverage, and assigned Claim Number 12-3010355-22 to the claim/loss.

10. Damage, as a result of a flood, was or should have been, if properly evaluated, a covered cause of loss pursuant to the terms and conditions of the Policy so issued.

11. The Proof of Loss detailing the losses was received by Defendant in compliance with the terms of the Policy.

12. Despite multiple attempts by Plaintiff to move the claim toward resolution, Defendant has repeatedly failed honor its Policy obligations and failed to indemnify Plaintiff for the loses sustained.

## COUNT I - BREACH OF INSURANCE CONTRACT

13. Plaintiff adopts and incorporates into this Count, as if fully rewritten herein, all of the allegations set forth in the above paragraphs.

14. Damage, as a result of a flood, was a covered cause of loss pursuant to the terms and conditions of the insurance policy issued by Defendant.

15. Plaintiff submitted a timely claim to Defendant for the alleged damages and have met all conditions precedent to the filing of a lawsuit, or all conditions precedent have been waived by Defendant.

16. Plaintiff submitted a factually detailed estimate of the damages and a sworn statement in Proof of loss, outlining a dispute as to the proper actual cash value.

17. Defendant has breached its insurance contract with Plaintiff by denying or constructively denying Plaintiff's claims for damages.

18. Defendant has breached its insurance contract with Plaintiff by failing and refusing to tender all insurance proceeds due and owing because of the purportedly covered loss.

19. Defendant has further breached its insurance contract with Plaintiff by failing and refusing to properly and fairly adjust all losses with its insured as required by the Policy.

20. As a result of Defendant's breach of insurance contract, as alleged herein, and also as will be demonstrated in discovery, Plaintiff has been deprived of the full coverage and other benefits afforded under the Policy.

WHEREFORE, Plaintiffs, **DAVID AND CAROLYN NYREN,** prays that after due proceedings are heard, that this Honorable Court enter Judgment in favor of Plaintiff and against the Defendant, **TYPTAP INSURANCE COMPANY, INC.,** for all amounts for damages to which it is entitled due to Defendant's breach of the insurance contract, and for such other costs, expenses, and other relief that this Honorable Court may deem to be in accordance with the applicable law, and as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, **DAVID AND CAROLYN NYREN**, hereby demand a trial by jury on all issues so triable.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 1, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day upon all counsel of record or pro se parties identified in the following Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

**VishioForry Insurance Lawyers**

*/s/ Garrett William Haakon Clifford, Esq.*
Garrett William Haakon
Clifford, Esq. Fla. Bar
107315 *Attorney for Plaintiff*
1112 Goodlette-Frank Road, Suite 204,
Naples, Florida 34102
(239) 703-7210
(239) 900-1993 (Fax)
service@vishioforry.com
kkelemen@vishioforry.com



This is a true and correct certified copy of the Declaration page and applicable forms for **DAVID NYREN**, Policy Number **12-1057514-02.**

Signed: _Dwayne Phillips_ _____
DocuSigned by:
1E8B74F333004F3...

State of Florida
**County of Hillsborough**

With respect to the above:

    The above-named signatory has sworn to and subscribed before me by **Dwayne Phillips**, the information contained within this document is accurate and true.  The above signatory is personally known to me **Robin Hill.**

_Robin Hill_
DocuSigned by:
C7FA48068EAD49D...

              Signature of Notary

              Notary Public for the State of Florida
                Commission # HH061345
                Expires November 8, 2024

DocuSign Envelope ID: 59B3116F-6173-4D94-A9EB-2164BE3AD86F

This page intentionally left blank

**TYPTAP INSURANCE COMPANY**

**PRIVACY POLICY**

<u>Your Privacy is Our Concern</u>

TypTap Insurance Company and its affiliates strive to provide high quality insurance products and excellent customer service. In doing so, we will obtain and develop personal information about you and your family. We consider this information confidential and have procedures in place to protect this information against unlawful use and disclosure. This Privacy Policy describes how we obtain and use information about you, and how we protect that information. It applies both to current and former policyholders.

**Our Basic Privacy Principles**

- We do not sell policyholder information.
- We do not disclose policyholder information except as necessary or appropriate to provide insurance products and services, and as otherwise allowed or required by law.
- When we share policyholder information with nonaffiliated vendors and service providers, we contractually require them to maintain confidentiality and to use the information solely for the purposes for which we provide the information.
- We maintain procedural, technical and physical safeguards to protect policyholder information.

**Sources of Personal Information**

We may obtain personal information about you from several sources. We obtain most of our information directly from you or through your agent, on insurance applications and forms you submit and other interactions you have with us. We also will learn information about you from servicing your policy. We might also receive information from outside vendors that furnish us with information relating to your eligibility for insurance, your existing or prospective policy, and your claims. These vendors may include consumer reporting agencies, home inspection companies, statistical or reporting bureaus in addition to other sources.

If you visit an Internet website that we maintain, we might obtain information about you that will enable us to identify you as a user, including your name, a user name, a password, and password reminders. We also might obtain information about your web browser, operating system and similar information to improve the performance and operation of our site.

**Our Use of Your Personal Information**

We will not sell your personal information to anyone, except to someone purchasing all or a portion of our business. We do not share any of the personal information we collect except among members of our corporate group (i.e. affiliates), non-affiliated vendors and service providers, joint marketers, agents and as permitted or required by law.

Typically we share information only to the extent necessary or appropriate to offer and provide our insurance products and services to you and to improve our products and services, as well as to effect, administer or enforce transactions that you request. For example, we might provide information about you and your policy to a company that prints and mails our insurance policies or to a company that adjusts any claims you may have. We might also share any personal information we collect with companies that perform marketing services on our behalf and other financial institutions with which we have joint marketing agreements. We might share information with your insurance agent.

When we share policyholder information with nonaffiliated parties, we contractually require them to maintain confidentiality and to use the information solely for purposes for which we provide the information.

We also are permitted or required to share information with certain other parties listed in federal law and state rules, such as insurance advisory organizations, rating agencies, regulatory authorities, consumer reporting agencies and attorneys and accountants.

**How We Protect Your Personal Information**

We maintain physical, electronic, and procedural safeguards to ensure the confidentiality of the personal information we obtain about you. We restrict access to your personal information to those employees who need to know that information to provide services to you.

**Affiliates**

This notice describes the practices and procedures of TypTap Insurance Company and its affiliates, HCI Group, Inc., TypTap Management Company, Homeowners Choice Property & Casualty Insurance Company, Inc., Homeowners Choice Managers, Inc., Southern Administration, Inc., and Claddaugh Casualty Insurance Company Ltd.

*This summary of our practices is furnished for your information. No action is required by you upon receipt of this notice.*

If you have any questions, you may contact us at:

TypTap Insurance Company
3001 SE Maricamp Road  Ocala, FL  34471
Attention: General Counsel

This page intentionally left blank



# NOTICE OF CHANGE IN POLICY TERMS

We are sending you this notice to inform you about important changes to your flood policy.

The descriptions in this notice are intended to be for informational purposes only. **Please review your policy and endorsement language carefully.** In the event of a conflict, the language in your policy and its endorsements will be controlling.

Under the **Conditions** section of your flood policy, the following changes have been made:

- **Loss Settlement** provisions – the coinsurance clause has been removed. Also, language has been added to clarify that covered losses under **Flood Coverage B – Personal Property** are settled at actual cash value.

- **Cancellation/Nonrenewal** provisions have been clarified to align with the NFIP.

- **Duties After Loss 5.f.** – Your signed, sworn proof of loss must be sent to us within 60 days after the loss.

Changes to your policy which have been mandated by the Florida Legislature or which correct prior typographical errors are not included in this notice. Please read your policy, declaration pages and related documents for complete descriptions and details.

Please contact your agent if you have any questions about these policy-related changes. You may, of course, call us directly at *(844) 289-7968.*

***Thank you for being a valued customer. We appreciate your business!***

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2164DE3A0B8F

This page intentionally left blank

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2184DE3A0B8F



# Flood Policy

**3001 S.E. Maricamp Rd.**
**Ocala, FL 34471**

**Customer Service: (844) 289-7968**
**To Report a Claim, Please Call: (844) 289-7968**

****************************IMPORTANT NOTICE**************************

This policy is issued on behalf of TypTap Insurance Company (the Company) and by acceptance of this policy, you agree:

1. The statements in the application are your representations;

2. This policy is issued in reliance upon the truth of those representations; and

3. This policy embodies all agreements existing between you and TypTap Insurance Company, or any of our Producers relating to this policy.

IN WITNESS WHERE OF: In consideration of your paid premium, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Robert B. Reid, CPCU, Senior Vice President - Operations
TypTap Insurance Company

# TypTap Insurance

For policy questions, contact your agent at (919) 716-9777
For claims please call                                    (844) 289-7968
For customer service please call                          (844) 289-7968

## TypTap Insurance Company
### Flood Declarations - Renewal

| Named Insured: | Described Location: | Policy Number:  12-1057514-02 |
|---|---|---|
| David Nyren<br>Carolyn Nyren<br>1334 EDGEWOOD LN<br>NORTHBROOK, IL 60062 | 308 TURTLE HATCH RD<br>NAPLES, FL 34103 | **Renewal**<br><br>Policy Effective Date:   **April 13, 2022 12:01 AM EDT**<br><br>Policy Expiration Date:  **April 13, 2023 12:01 AM EDT** |
| **County:** COLLIER | | |

### COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| Coverages | Limit of Liability | Annual Premium | Forms, Notices and Endorsements: |
|---|---|---|---|
| A.  Building | $500,000 | $4,185 | TTIC SAFP J 09 18<br>TTIC SAFP INFO 11 19<br>TTIC SAFP 10 18<br>TTIC SAFP 23 86 01 16 |
| B.  Personal Property | $125,000 | Included | |
| C.  Other Coverages | Included | Included | |
| D.  Increased Cost of Compliance | $30,000 | Included | |
| E.  Loss of Use | $5,000 | Included | |

| Credits and Charges: | Rating Information: | |
|---|---|---|
| | Year Home Built: | 2001 |
| | FEMA Flood Zone: | AE |
| | TypTap Territory: | 25000 |

| | | Deductible - | In case of a loss, we only cover that part of the loss over the deductible stated: |
|---|---|---|---|
| Total Annual Policy Premium | $4,185 | | |
| Policy Fees (See Details, P.2) | $54 | | |
| Endorsement Fees (See Details, P.2) | $0 | | |
| **Total Policy Charges** | **$4,239** | **$10,000**  Flood Building Deductible | |
| Premium Change Due to Rate Change<br>Premium Change Due to Coverage Change<br>Fee Change from Prior Term | | **$10,000**  Flood Personal Property Deductible | |

## Please see Page 2 for important notices that apply to this policy.

| **Agent:** YANA BALDWIN | Other: | **Bill to:** Mortgagee1 |
|---|---|---|
| MCGRIFF INSURANCE SERVICES INC<br>7701 AIRPORT CENTER DR<br>SUITE 1800<br>GREENBORO, NC 27409<br><br>**Phone:** (919) 716-9777 | Mortgagee1 - BNY Mellon, N.A. ISAOA ATIMA, PO Box 961292, Fort Worth, TX, 76161-0292, Loan # 1471841096 | |

Authorized Countersignature:                                                February 11, 2022 11:12 PM EST

**Policy Number: 12-1057514-02**

| Endorsement  Premium Details: | Limit of Liability | Annual Premium |
|---|---|---|
| Personal Property Replacement Coverage | Included | Included |

**Underwriting Surcharges Details:**

| Policy Fee Details: | | |
|---|---|---|
| Managing General Agency Fee | | $25 |
| 2022-1 FIGA Assessment Surcharge | | $29 |
| **Policy Fee Total** | **Amount** | **$54** |

| Policy Changes and Endorsements: | Date Effective | Premium Change |
|---|---|---|
| **Endorsement Total** | | **$0** |

## NOTICES

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR FLOOD LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.



# TTIC Flood Policy Compliance Information

**THIS POLICY MEETS ALL OF THE PROVISIONS REQUIRED BY THE BIGGERT-WATERS FLOOD INSURANCE REFORM ACT OF 2012 AND TITLE 42 U.S. CODE 4012a(b)(7).**

**TITLE II—FLOOD INSURANCE**
**Subtitle A—Flood Insurance Reform and Modernization**

**SEC. 100201. SHORT TITLE.**

This subtitle may be cited as the "Biggert-Waters Flood Insurance Reform Act of 2012".

**SEC. 100202. DEFINITIONS.**

"(7) PRIVATE FLOOD INSURANCE DEFINED - In this sub-section, the term 'private flood insurance' means an insurance policy that -

"(A) is issued by an insurance company that is -

"(i) licensed, admitted, or otherwise approved to engage in the business of insurance in the State or jurisdiction in which the insured building is located, by the insurance regulator of that State or jurisdiction;

or

"(ii) in the case of a policy of difference in conditions, multiple peril, all risk, or other blanket coverage insuring nonresidential commercial property, is recognized, or not disapproved, as a surplus lines insurer by the insurance regulator of the State or jurisdiction where the property to be insured is located;

"(B) provides flood insurance coverage which is at least as broad as the coverage provided under a standard flood insurance policy under the national flood insurance program, including when considering deductibles, exclusions, and conditions offered by the insurer;

"(C) includes -

"(i) a requirement for the insurer to give 45 days written notice of cancellation or non-renewal of flood insurance coverage to -

"(I)   the insured; and

"(II)  the regulated lending institution or Federal agency lender;

"(ii) information about the availability of flood insurance coverage under the national flood insurance program;

"(iii) a mortgage interest clause similar to the clause contained in a standard flood insurance policy under the national flood insurance program; and

"(iv) a provision requiring an insured to file suit not later than one (1) year after date of a written denial of all or part of a claim under the policy; and

"(D) contains cancellation provisions that are as restrictive as the provisions contained in a standard flood insurance policy under the national flood insurance program."

DocuSign Envelope ID: F9B3116F-6473-4D84-A9EB-2164DE3A0B8F

This page intentionally left blank

TypTap Insurance Company                                                    FLOOD POLICY

# TABLE OF CONTENTS

**INSURANCE AGREEMENT** ...............................................................................1

   Insuring Agreement..................................................................................1

   Certification ............................................................................................1

**DEFINITIONS** ...............................................................................................1

**DEDUCTIBLE** ...............................................................................................3

**PROPERTY COVERED** ...................................................................................3

  FLOOD COVERAGE A - BUILDING PROPERTY AND ADDITIONS AND EXTENSIONS....................3

   Covered Property .....................................................................................3

  FLOOD COVERAGE B - PERSONAL PROPERTY ..................................................5

   Covered Property .....................................................................................5

   Special Limits .........................................................................................6

  FLOOD COVERAGE C - OTHER COVERAGES .....................................................6

   Debris Removal .......................................................................................6

   Loss Avoidance Measures ..........................................................................6

  FLOOD COVERAGE D – INCREASED COST OF COMPLIANCE .................................7

   General ................................................................................................7

   Limit of Liability ......................................................................................7

   Eligibility ...............................................................................................7

   Conditions .............................................................................................8

   Exclusions .............................................................................................8

  FLOOD COVERAGE E – LOSS OF USE .............................................................9

   Additional Living Expense ...........................................................................9

   Fair Rental Value .....................................................................................9

   Civil Authority Prohibits Use ........................................................................9

   Loss Not Covered ....................................................................................9

**PROPERTY NOT COVERED** ...........................................................................10

**EXCLUSIONS**..............................................................................................10

   Earth Movement......................................................................................10

   Economic Loss .......................................................................................11

   "Flood" in Progress .................................................................................11

   Pollutants .............................................................................................11

   Other Exclusions ....................................................................................11

**CONDITIONS** ..............................................................................................12

   Conditions Suspending or Restricting "Flood" Insurance ....................................12

   Continuous Lake Flooding..........................................................................12

**TypTap Insurance Company**                                                           **FLOOD POLICY**

Loss Settlement ..................................................................................................... 14

Mediation or Appraisal ......................................................................................... 14

Other Insurance .................................................................................................... 15

Suit Against Us ...................................................................................................... 15

Mortgagee Clause ................................................................................................. 15

Concealment or Fraud and Policy Voidance.......................................................... 16

Cancellation and Nonrenewal ............................................................................... 16

Renewal Notification ............................................................................................. 17

Duties After Loss ................................................................................................... 17

No Benefit to Bailee .............................................................................................. 18

Loss Payment ........................................................................................................ 18

Abandonment ........................................................................................................ 18

Salvage .................................................................................................................. 18

Subrogation ........................................................................................................... 18

Notice .................................................................................................................... 18

**LIBERALIZATION CLAUSE** ...................................................................................**18**

**TypTap Insurance Company**                                                      FLOOD POLICY

## PRIVATE FLOOD INSURANCE PROGRAM
## TYPTAP - FLOOD INSURANCE POLICY

## INSURANCE AGREEMENT

**Insuring Agreement**

We will pay for "direct physical loss by or from flood" to your insured property if you:

1.  Have paid the correct premium;
2.  Comply with all terms and conditions of this **policy** and
3.  Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your **policy** based on our review.

As an alternative to this **policy**, "flood" insurance may be available under the "National Flood Insurance Program (NFIP)" through an insurance agent who may obtain a flood policy either directly through the "NFIP" or through an insurance company that participates in the "NFIP".

**Certification**

This "Private Flood Insurance Policy" meets the private flood insurance requirements specified in 42 U.S.C. s. 4012a(b) and does not have any provision which is not in compliance with 42 U.S.C. s. 4012a(b).

## DEFINITIONS

In this **policy**, "you" and "your" refer to the insured(s) shown on the "Declarations Page" of this **policy** and your spouse, if a resident of the same household. "Insured(s)" includes: Any mortgagee and loss payee named in the application and on the "Declarations Page", as well as any other mortgagee and loss payee determined to exist at the time of loss in the order of precedence. "We", "us", and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases. The precise definitions are intended to protect you.

**"Flood"**

as used in this **policy**, means:

a.  A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more neighboring properties (at least one of which is your property) from:

(1) Overflow of inland or tidal waters;

(2) Unusual and rapid accumulation or runoff of surface waters from any source; or

(3) "Mudflow"; or

b.  Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves of water exceeding anticipated cyclical levels that result in a "flood" as defined in **a.(1)** above.

**TypTap Insurance Company**                                                                    **FLOOD POLICY**

The following are the other key definitions we use in this **policy**:

| | |
|---|---|
| **"Act"** | means the National Flood Insurance Act of 1968 and any amendments to it. |
| **"Actual Cash Value"** | means the cost to replace an insured item of property at the time of loss, less the value of its physical depreciation. |
| **"Application"** | the statement made and signed by you and your agent in applying for this **policy**. This "application" gives information we use to determine the eligibility of the risk, the type of **policy** to be issued, and the correct premium payment. The "application" is part of the flood insurance **policy**. For us to issue you a **policy**, the correct premium payment must accompany the "application". |
| **"Base Flood"** | means a "flood" having a one percent chance of being equaled or exceeded in any given year. |
| **"Basement"** | means any area of the "building", including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides. |
| **"Building"** | means a structure with two or more outside rigid walls and a fully secured roof, which is affixed to a permanent site. "Building" does not mean a gas or liquid storage tank or a recreational vehicle, park trailer, or other similar vehicle. |
| **"Cancellation"** | the ending of the insurance coverage provided by this **policy** before the expiration date. |
| **"Declarations Page"** | means a summary of information you provided in the "application" for insurance. The "Declarations Page" also describes the terms of the **policy**, limits of coverage, and displays the premium and our name. |
| **"Described Location"** | means the location where the insured "building(s)" or personal property is found. The "described location" is shown on the "Declarations Page". |
| **"Direct Physical Loss by or From Flood"** | means loss or damage to insured property, directly caused by a "flood". There must be evidence of physical changes to the property. |
| **"Dwelling"** | means a "building" designed for use as a residence for no more than four families. |
| **"Elevated Building"** | means a "building" that has no "basement" and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns. |
| **"Elevated Post-FIRM Building"** | means a "building" that has no "basement" and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later. |
| **"Emergency Program"** | means the initial phase of a community's participation in the "National Flood Insurance Program". During this phase, only limited amounts of insurance are available under the "Act". |
| **"Improvements"** | means fixtures, alterations, installations, or additions comprising a part of the insured "dwelling" or the apartment in which you reside. |
| **"Mudflow"** | means a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not "mudflows". |
| **"National Flood Insurance Program (NFIP)"** | means the program of flood insurance coverage and floodplain management administered under the Act and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B. |

| | |
|---|---|
| **"Policy"** | means the entire written contract between you and us. It includes: |
| | **a.** this printed form; |
| | **b.** the "application" and "Declarations Page"; |
| | **c.** any endorsement (s) that may be issued; and |
| | **d.** any renewal certificate indicating that coverage has been instituted for a new **policy**. |
| | Only one "dwelling", which you specifically described on the "application", may be insured under this **policy**. |
| **"Pollutants"** | means substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed. |
| **"Private Flood Insurance Policy (PFIP)"** | means this **policy**. |
| **"Replacement Cost"** | means the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation. |
| **"Special Flood Hazard Area"** | means an area having special "flood", or "mudflow", and/or "flood"-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V. |

## DEDUCTIBLE

When a loss is covered under this **policy**, we will pay only that part of the loss that exceeds your deductible amount, subject to the "flood" limit of liability that applies. The deductible amount is equal to the "flood" deductible shown on the "Declarations Page". In each loss from "flood", separate deductibles apply to the "building" and personal property insured by this **policy**.

The deductible does not apply to the following under Property Covered:

1. Flood Coverage C – Other Coverages, Loss Avoidance Measures;
2. Flood Coverage D – Increased Cost of Compliance; or
3. Flood Coverage E – Loss of Use.

## PROPERTY COVERED

### FLOOD COVERAGE A - BUILDING PROPERTY AND ADDITIONS AND EXTENSIONS

| | |
|---|---|
| **Covered Property** | We insure against "direct physical loss by or from flood" to: |
| | 1. The "dwelling" at the "described location". |
| | 2. Additions and extensions attached to and in contact with the "dwelling" by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the "building" by means of a common interior wall that is not a solid load-bearing wall are always considered part of the "dwelling" and cannot be separately insured. |

**TypTap Insurance Company**                                                                                                              **FLOOD POLICY**

**Covered Property Continued**

3.  A detached garage and/or other structures at the "described location". Coverage is limited to no more than 10% of the "flood" limit of coverage on the "dwelling". Use of this insurance is at your option but reduces the "flood" "building" limit of liability. We do not cover any detached garage or other structure used or held for use for business or farming purposes.

4.  Materials and supplies to be used for construction, alteration, or repair of the "dwelling", a detached garage or other structures while the materials and supplies are stored in a fully enclosed "building" at the "described location" or on an adjacent property.

5.  A "building", other than a "dwelling", under construction, alteration, or repair at the "described location".

    a.  If the structure is not yet walled or roofed as described in the definition for "building" then coverage applies:

        (1) Only while such work is in progress; or

        (2) If such work is halted, only for a period of up to 90 continuous days thereafter.

    b.  However, coverage does not apply until the "building" is walled and roofed if the lowest floor, including the "basement" floor, of a non-"elevated building" or the lowest elevated floor of an "elevated building" is:

        (1) Below the "base flood" elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or

        (2) Below the "base flood" elevation adjusted to include the effect of wave action in Zones VE or V1-V30.

        The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.

6.  The following items of property, which are covered under Coverage A only:

    a.  Awnings and canopies;

    b.  Blinds;

    c.  Built-in dishwashers;

    d.  Built-in microwave ovens;

    e.  Carpet permanently installed over unfinished flooring;

    f.  Central air conditioners;

    g.  Elevator equipment;

    h.  Fire sprinkler systems;

    i.  Walk-in freezers;

    j.  Furnaces and radiators;

    k.  Garbage disposal units;

    l.  Hot water heaters, including solar water heaters;

    m.  Light fixtures;

    n.  Outdoor antennas and aerials fastened to buildings;

    o.  Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;

    p.  Plumbing fixtures;

    q.  Pumps and machinery for operating pumps;

    r.  Ranges, cooking stoves, and ovens;

    s.  Refrigerators; and

    t.  Wall mirrors, permanently installed.

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8F

**TypTap Insurance Company**                                                                            **FLOOD POLICY**

**Covered Property Continued**

7.  Items of property in a "building" enclosure below the lowest elevated floor of an "elevated post-FIRM building" located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a "basement", regardless of the zone. Coverage is limited to the following:

   a.  Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

      (1) Central air conditioners;

      (2) Cisterns and the water in them;

      (3) Drywall for walls and ceilings in a "basement" and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;

      (4) Electrical junction and circuit breaker boxes;

      (5) Electrical outlets and switches;

      (6) Elevators, dumbwaiters, and related equipment;

      (7) Fuel tanks and the fuel in them;

      (8) Furnaces and hot water heaters;

      (9) Heat pumps;

      (10) Nonflammable insulation in a "basement";

      (11) Pumps and tanks used in solar energy systems;

      (12) Stairways and staircases attached to the "building", not separated from it by elevated walkways;

      (13) Sump pumps;

      (14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

      (15) Well water tanks and pumps;

      (16) Required utility connections for any item in this list; and

      (17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a "building".

   b.  Clean-up.

## FLOOD COVERAGE B - PERSONAL PROPERTY

**Covered Property**

If you have purchased personal property "flood" coverage, we insure against "direct physical loss by or from flood" to personal property inside a "building" at the "described location", if:

   a.  The personal property is owned by you or your household family members; and

   b.  At your option, the personal property is owned by guests or residence employees.

Personal property is also covered for a period of 45 days at another location as set forth in Flood Coverage C – Other Coverages, Property Removed to Safety.

Personal property in a "building" that is not fully enclosed must be secured to prevent flotation out of the "building". If the personal property does float out during a "flood", it will be conclusively presumed that it was not reasonably secured. In that case, there is no coverage for such property.

Coverage for personal property includes the following property, subject to Flood Coverage B – Personal Property, Covered Property above, which is covered under Coverage B only:

   a.  Air conditioning units, portable or window type;

   b.  Carpets, not permanently installed, over unfinished flooring;

   c.  Carpets over finished flooring;

   d.  Clothes washers and dryers;

   e.  Cook-out grills;

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2184DE3A0B8E

**TypTap Insurance Company**                                           **FLOOD POLICY**

| | |
|---|---|
| **Covered Property Continued** | **f.**  Food freezers, other than walk-in, and food in any freezer; and |

       **g.**  Portable microwave ovens and portable dishwashers.

Coverage for items of property in a "building" enclosure below the lowest elevated floor of an "elevated post-FIRM building" located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a "basement", regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

       **a.**  Air conditioning units, portable or window type;

       **b.**  Clothes washers and dryers; and

       **c.**  Food freezers, other than walk-in, and food in any freezer.

**Special Limits**

We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:

       **a.**  Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

       **b.**  Rare books or autographed items;

       **c.**  Jewelry, watches, precious and semi-precious stones, or articles of gold, silver, or platinum;

       **d.**  Furs or any article containing fur which represents its principal value, or

       **e.**  Personal Property used in any business.

We will pay only for the functional value of antiques.

## FLOOD COVERAGE C - OTHER COVERAGES

**Debris Removal**

We will pay the expense to remove non-owned debris on or in insured property, and owned debris anywhere. If you or a member of your household performs the removal work, the value of your work will be based on the federal minimum wage.

We will pay no more than $500,000 or the Coverage A limit of liability for "flood", whichever is less.

This coverage does not increase the limit of liability listed for "flood" on the "Declarations Page".

**Loss Avoidance Measures**

**Sandbags, Supplies, and Labor**

We will pay up to $1,000 for costs you incur to protect the insured "building" from a "flood" or imminent danger of "flood", for the following:

       **a.**  Your reasonable expenses to buy:

          **(1)**  Sandbags, including sand to fill them;

          **(2)**  Fill for temporary levees;

          **(3)**  Pumps; and

          **(4)**  Plastic sheeting and lumber used in connection with these items.

       **b.**  The value of work, at the federal minimum wage, that you, or a member of your household, perform.

       **c.**  This coverage for Sandbags, Supplies, and Labor applies only if damage to insured property by or from "flood" is imminent, and the threat of "flood" damage is apparent enough to lead a person of common prudence to anticipate "flood" damage. One of the following must also occur:

          **(1)**  A general and temporary condition of flooding in the area near the "described location" must occur, even if the "flood" does not reach the insured "building"; or

          **(2)**  A legally authorized official must issue an evacuation order or other civil order for the community in which the insured "building" is located calling for measures to preserve life and property from the peril of "flood".

**TypTap Insurance Company**                                          **FLOOD POLICY**

| | |
|---|---|
| **Loss Avoidance Measures Continued** | This coverage does not increase the limit of liability listed for Coverage A or Coverage B for "flood" on the "Declarations Page". |

**Property Removed to Safety**

1. We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the "described location" that contains the property in order to protect it from "flood" or the imminent danger of "flood". Reasonable expenses include the value of work, at the federal minimum wage, you or a member of your household perform.

2. If you move insured property to a location other than the "described location" that contains the property, in order to protect it from "flood" or the imminent danger of "flood", we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed "building" or otherwise reasonably protected from the elements.

Any property removed must be placed above ground level or outside of the "special flood hazard area".

This coverage does not increase the limit of liability listed for Coverage A or Coverage B listed on the "Declarations Page".

## FLOOD COVERAGE D – INCREASED COST OF COMPLIANCE

| | |
|---|---|
| **General** | This **policy** pays you to comply with a state or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering "flood" damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. |
| **Limit of Liability** | We will pay you up to $30,000 under this Coverage D - Increased Cost of Compliance, which only applies to flood policies with "building" coverage (Coverage A). This coverage is in addition to the limit of liability listed for Coverage A for "flood" on the "Declarations Page"; however, the most you can collect under this **policy** for both Coverage A and flood Coverage D cannot exceed $500,000. We do not charge a separate deductible for a claim under Coverage D. |
| **Eligibility** | A structure covered under Coverage A sustaining a loss caused by a "flood" as defined by this **policy** must: |

    **a.** Be a repetitive loss structure. A repetitive loss structure is one that meets the following conditions:

       **(1)** The structure has suffered "flood" damage on two occasions during a 10-year period, which ends on the date of the second loss.

       **(2)** The cost to repair the "flood" damage, on average, equaled or exceeded 25% of the market value of the structure at the time of each "flood" loss.

       **(3)** The state or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

    **b.** Be a structure that has had "flood" damage in which the cost to repair equals or exceeds 50% of the market value of the structure at the time of the "flood". The state or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

This Coverage D pays you to comply with state or local floodplain management laws or ordinances that meet the minimum standards of the "National Flood Insurance Program" found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

    **a.** Eligibility Paragraph **a.** above.

| | |
|---|---|
| **Eligibility Continued** | **b.** Elevation or floodproofing in any risk zone to preliminary or advisory "base flood" elevations provided by the Federal Emergency Management Agency (FEMA) which the state or local government has adopted and is enforcing for "flood"-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with "base flood" elevations. This also includes compliance activities in zones where "base flood" elevations are being increased, and a "flood"-damaged structure must comply with the higher advisory "base flood" elevation). Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for "flood"-damaged structures to elevations derived solely by the community. |

**c.** Elevation or floodproofing above the "base flood" elevation to meet state or local "freeboard" requirements, i.e., that a structure must be elevated above the "base flood" elevation.

Under the minimum "NFIP" criteria at 44 CFR 60.3 (b)(4), states and communities must require the elevation or floodproofing of structures in unnumbered A zones to the "base flood" elevation where elevation data is obtained from a federal, state, or other source. Such compliance activities are also eligible for Coverage D.

This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding at the same or another site to meet state or local floodplain management laws or ordinances, subject to Exclusion **g.** below.

This coverage will also pay to bring a "flood"-damaged structure into compliance with state or local floodplain management laws or ordinances, even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

| | |
|---|---|
| **Conditions** | When a structure covered under Coverage A sustains a loss caused by a "flood", our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current state or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the "building" debris or a portion thereof caused by the enforcement of current state or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities. |

When the "building" is repaired or rebuilt, it must be intended for the same occupancy as the present "building" unless otherwise required by current floodplain management ordinances or laws.

| | |
|---|---|
| **Exclusions** | Under this Coverage D (Increased Cost of Compliance) we will not pay for: |

**a.** The cost to comply with any floodplain management law or ordinance in communities participating in the "Emergency Program".

**b.** The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**c.** The loss in value to any insured "building" or other structure due to the requirements of any ordinance or law.

**d.** The loss in residual value of the undamaged portion of a "building" demolished as a consequence of enforcement of any state or local floodplain management law or ordinance.

**e.** Any Increased Cost of Compliance under this Coverage D:

**TypTap Insurance Company**  **FLOOD POLICY**

| | |
|---|---|
| **Exclusions Continued** | **(1)** Until the "building" is elevated, floodproofed, demolished, or relocated on the same or to another premises; and |
| | **(2)** Unless the "building" is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed two years. |
| | **f.** Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the state or local floodplain management law or ordinance. |
| | **g.** Any compliance activities needed to bring additions or "improvements" made after the loss occurred into compliance with state or local floodplain management laws or ordinances. |
| | **h.** Loss due to any ordinance or law that you were required to comply with before the current loss. |
| | **i.** Any rebuilding activity to standards that do not meet the "NFIP"'s minimum requirements. This includes any situation where the insured has received from the state or community a variance in connection with the current "flood" loss to rebuild the property to an elevation below the "base flood" elevation. |
| | **j.** Increased Cost of Compliance for a garage or carport. |
| | **k.** Any structure insured under a NFIP Group Flood Insurance Policy. |

## FLOOD COVERAGE E – LOSS OF USE

If a "flood" loss covered by this **policy** makes your "dwelling" where you reside unfit to live in, we will pay up to $5,000 for Flood Coverage E – Loss of Use. This limit applies on an aggregate per loss basis for Additional Living Expense, Fair Rental Value and Civil Authority Prohibits Use.

| | |
|---|---|
| **Additional Living Expense** | If a "flood" loss causes the "dwelling" to become uninhabitable, we will cover any necessary increase in living expenses you incur to maintain your normal household standard of living. |
| | Payment will be for the shortest time required to repair or replace the damage or permanently settle your household elsewhere. |
| **Fair Rental Value** | If a "flood" loss causes that part of the "dwelling" rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. |
| | Payment will be for the shortest time required to repair or replace the part of the "dwelling" rented or held for rental. Fair rental value does not include any expenses that do not continue while that part of the "dwelling" rented or held for rental is uninhabitable. |
| **Civil Authority Prohibits Use** | If a civil authority prohibits your use of the "dwelling" as a result of direct damage to a neighboring premise by a "flood", we will cover, pursuant to the above provisions, any Additional Living Expense and Fair Rental Value losses that you incur. Coverage is for a period of no more than two weeks while use is prohibited. |
| **Loss Not Covered** | We do not cover loss due to cancellation of a lease or agreement. |

**TypTap Insurance Company**                                             FLOOD POLICY

---

## PROPERTY NOT COVERED

---

We do not cover the following property under this **policy**:

1. Personal property not inside a fully enclosed "building";

2. A "building", and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a "building" used as a boathouse or any structure or "building" into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

   a. Used mainly to service the "described location", or

   b. Designed and used to assist handicapped persons,

   while the vehicles or machines are inside a "building" at the "described location".

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured "building";

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. "Buildings" and all their contents if more than 49% of the "actual cash value" of the "building" is below ground, unless the lowest level is at or above the "base flood" elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Properties located in communities not participating in the "NFIP" or in the "NFIP" "Emergency Program".

---

## EXCLUSIONS

---

**Earth Movement** | We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by "flood". Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or

6. Gradual erosion.

**TypTap Insurance Company**                                                           **FLOOD POLICY**

| | |
|---|---|
| **Earth Movement Continued** | We do, however, pay for losses from "mudflow" and land subsidence as a result of erosion that are specifically covered under our definition of "flood" (see Definitions, "Flood", **a.(3)**, and **b.**). |
| **Economic Loss** | We only pay for "direct physical loss by or from flood", which means that we do not pay you for: |

    **1.** Loss of revenue or profits;

    **2.** Loss of access to the insured property or "described location";

    **3.** Loss of use of the insured property or "described location";

    **4.** Any additional living expenses incurred while the insured "building" is being repaired or is unable to be occupied for any reason; or

Exclusions **1.** through **4.** above will apply unless coverage is provided under Flood Coverage E – Loss of Use.

    **5.** Loss from interruption of business or production;

    **6.** The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D - Increased Cost of Compliance;

    **7.** Any other economic loss you suffer.

| | |
|---|---|
| **"Flood" in Progress** | We do not insure a loss directly or indirectly caused by a "flood" that is already in progress at the time and date: |

    **1.** The **policy** term begins; or

    **2.** Coverage is added at your request.

| | |
|---|---|
| **Pollutants** | We do not pay for the testing or monitoring of "pollutants", unless required by law or ordinance. If testing or monitoring of "pollutants" is required by law or ordinance, the cost of testing or monitoring will reduce the limit of Flood Coverage A - BUILDING PROPERTY coverage under this **policy**. |
| **Other Exclusions** | We do not insure for direct physical loss caused directly or indirectly by any of the following: |

    **1.** The pressure or weight of ice;

    **2.** Freezing or thawing;

    **3.** Rain, snow, sleet, hail, or water spray;

    **4.** Water, moisture, mildew, or mold damage that results primarily from any condition:

        **a.** Substantially confined to the "dwelling"; or

        **b.** That is within your control, including but not limited to:

            **(1)** Design, structural, or mechanical defects;

            **(2)** Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or

            **(3)** Failure to inspect and maintain the property after a "flood" recedes;

    **5.** Water or waterborne material that:

        **a.** Backs up through sewers or drains;

        **b.** Discharges or overflows from a sump, sump pump, or related equipment; or

        **c.** Seeps or leaks on or through the covered property;

    unless there is a "flood" in the area and the "flood" is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or seepage of water;

| **Other Exclusions Continued** | 6. | The pressure or weight of water unless there is a "flood" in the area and the "flood" is the proximate cause of the damage from the pressure or weight of water; |

**Other Exclusions Continued**

6. The pressure or weight of water unless there is a "flood" in the area and the "flood" is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from "direct physical loss by or from flood" to power, heating, or cooling equipment on the "described location";

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or any member of your household do or conspire to do to cause loss by "flood" deliberately; or

10. Alteration of the insured property that significantly increases the risk of flooding.

---

# CONDITIONS

---

**Conditions Suspending or Restricting "Flood" Insurance**

We are not liable for "flood" loss that occurs while there is a "flood" hazard that is increased by any means within your control or knowledge.

**Continuous Lake Flooding**

1. If an insured "building" has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in a covered loss to the insured "building" equal to or greater than the "building" **policy** limits plus the deductible or the maximum payable under the **policy** for any one "building" loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

   a. To make no further claim under this **policy**;

   b. Not to seek renewal of this **policy**;

   c. Not to apply for any "flood" insurance under the "Act" for property at the "described location"; and

   d. Not to seek a premium refund for current or prior terms.

   If the **policy** term ends before the insured "building" has been flooded continuously for 90 days, the provisions of this Paragraph **1.** will apply when the insured's "building" suffers a covered loss before the **policy** term ends.

2. If your insured "building" is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either Paragraph **1.** above or **2.** (A closed basin lake is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded 1 square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States, where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions). Under this Paragraph **2.** we will pay your claim as if the "building" is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

   a. Lake "flood" waters must damage or imminently threaten to damage your "building".

   b. Before approval of your claim, you must:

      (1) Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; and

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8F

**TypTap Insurance Company**                                                    **FLOOD POLICY**

**Continuous Lake
Flooding Continued**

**(2)** Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes," to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for "flood" damage from continuous lake flooding.   FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable "buildings" under the "NFIP" and are insured under the "NFIP", they will not be eligible for the benefits of this Paragraph **2.** If a U.S. Army Corps of Engineers certified "flood" control project or otherwise certified "flood" control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects.   The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; and

**(3)** Comply with Paragraphs **1.a.** through **1.d.** above.

**c.** Within 90 days of approval of your claim, you must move your "building" to a new location outside the ASC. FEMA will give you an additional 30 days to move if you show there is sufficient reason to extend the time.

**d.** Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your "building".

**e.** Before the approval of your claim, the community having jurisdiction over your "building" must:

**(1)** Adopt a permanent land use ordinance or a temporary moratorium, for a period not to exceed 6 months, to be followed immediately by a permanent land use ordinance that is consistent with the provisions specified in the easement required in paragraph **2.b.** above.

**(2)** Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the "Act", as amended, "flood" insurance to the "building" can be denied; and

**(3)** Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph **2.b.** above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a non-profit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph **2.b.** above.

**f.** Before the approval of your claim, the affected state must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes".

**g.** You must have "flood" insurance coverage continuously in effect from a date established by FEMA until you file a claim under paragraph **2.** If a subsequent owner buys "flood" insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph **2.**, we will not consider to be in effect any increased coverage that became effective after the date established by FEMA.   The exception to this is any increased coverage in the amount suggested by us as an inflation adjustment.

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8E

**TypTap Insurance Company**                                          FLOOD POLICY

| | |
|---|---|
| **Continuous Lake Flooding Continued** | **h.** This paragraph **2.** will be in effect for a community when the FEMA Regional Administrator for the affected region provides to the community, in writing, the following: |

      **(1)** Confirmation that the community and the state are in compliance with the conditions in paragraphs **2.e.** and **2.f.** above; and

      **(2)** The date by which you must have "flood" insurance in effect.

**Loss Settlement**

Coverage under FLOOD COVERAGE A - BUILDING PROPERTY is settled at "replacement cost" without deduction for depreciation, but does not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in FLOOD COVERAGE D – INCREASED COST of COMPLIANCE of this **policy** subject to the following:

We will initially pay the actual cash value of the loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform such repairs or replacement as work is performed and expenses are incurred, but not more than the least of the following amounts:

**a.** The FLOOD COVERAGE A - BUILDING PROPERTY limit of liability;

**b.** The "replacement cost" of that part of the building damaged for like construction and use on the same premises; or

**c.** The necessary amount to repair or replace the damaged building.

In the event of a total loss to the dwelling, we will pay the "replacement cost" without reservation or holdback of any depreciation in value subject to the limits of this **policy**.

Covered losses under FLOOD COVERAGE B – PERSONAL PROPERTY are settled at actual cash value.

**Mediation or Appraisal**

**1.** **Mediation.** If there is a dispute with respect to a "flood" claim under this **policy**, you or we may demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services.

    **a.** The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request.

    **b.** The settlement in the course of the mediation is binding only if:

      **(1)** Both parties agree, in writing, on a settlement; and

      **(2)** You have not rescinded the settlement within 3 business days after reaching settlement.

    **c.** You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

    **d.** We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference.

    **e.** However, if we fail to appear at a mediation conference, we will pay:

      **(1)** Your actual cash expenses incurred while attending the conference; and

      **(2)** Also pay the mediator's fee for the rescheduled conference.

**2.** **Appraisal**. If you and we fail to agree on the amount of loss, either may request an appraisal of the loss. However, both parties must agree to the appraisal. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "described location" is located. The appraisers will separately set the amount of the loss. If the appraisers submit

DocuSign Envelope ID: F9B3116F-6172-4D84-A9EB-2164DE3AD86F

**TypTap Insurance Company**                                                                                    **FLOOD POLICY**

| | |
|---|---|
| **Mediation or Appraisal Continued** | a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.<br><br>Each party will:<br><br>  **a.** Pay its own appraiser; and<br><br>  **b.** Bear the other expenses of the appraisal and umpire equally. |
| **Other Insurance** | If a loss covered by this **policy** is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this **policy** bears to the total amount of insurance covering the loss. If the other policy has a provision stating that it is excess insurance, this **policy** will be primary. |
| **Suit Against Us** | You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy**. If you do sue, you must start the suit within one (1) year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this **policy** and to any dispute that you may have arising out of the handling of any claim under the **policy**. |
| **Mortgagee Clause** | The word "mortgagee" includes trustee. If a mortgagee is named in this **policy**, any loss payable under Flood Coverage A will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.<br><br>If we deny your claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:<br><br>  **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware. This notice includes notifying us of foreclosure or if a foreclosure has been initiated;<br><br>  **b.** Pays any premium due under this **policy** on demand if you have neglected to pay the premium; and<br><br>  **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **2.** and **4.** Duties After Loss, Mediation or Appraisal, Suit Against Us and Loss Payment under – **Conditions** also apply to the mortgagee.<br><br>If we pay the mortgagee for any loss and deny payment to you:<br><br>  **1.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or<br><br>  **2.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.<br><br>Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.<br><br>We provide coverage to no mortgagee or its representatives under this **policy** if, whether before or after a loss, a mortgagee or its representatives has:<br><br>  **1.** Intentionally concealed or misrepresented any material fact or circumstance;<br><br>  **2.** Engaged in fraudulent conduct; or<br><br>  **3.** Made material false statements;<br><br>relating to this insurance.<br><br>  If we decide to cancel or not to renew this **policy**, the mortgagee will be notified at least 45 days before the date cancellation or nonrenewal takes effect. |

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8F

**TypTap Insurance Company**                                                 **FLOOD POLICY**

**Concealment or Fraud and Policy Voidance**

1. With respect to any insureds covered under this **policy**, this **policy** is void and we will provide no coverage for loss under this **policy** if, before or after a loss, any insured has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made material false statements;

   relating to this **policy**.

2. This **policy** will be void as of the date the wrongful acts described above were committed.

3. Fines, civil penalties, and imprisonment under applicable Florida laws may also apply to the acts of fraud or concealment described above.

4. We will not deny a claim based on credit information available in public records, whether disclosed or undisclosed, if the **policy** has been in effect for more than 90 days.

**Cancellation and Nonrenewal**

1. When you have not paid the premium, we may cancel the **policy** at any time by letting you know at least 45 days before the date of cancellation takes effect.

2. Cancellation of this **policy** by us:

   We may cancel this **policy** with 45 days' notice if:

   a. There has been a material misstatement or misrepresentation; or

   b. There has been fraud; or

   c. The risk is not eligible for flood coverage; or

   d. The risk falls under the **policy** conditions for continuous lake flooding or closed basin lakes.

   We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reason(s) for cancellation.

3. Cancellation of **policy** by you:

   You may cancel this **policy**, at any time, in accordance with the applicable TypTap rules and a valid cancellation reason as listed below. You will be entitled to a full or partial refund depending on the effective date of cancellation.

   a. Cancelled prior to the **policy** effective date for whatever reason.

   b. Not accepted by your lender, and a written statement from that lender is provided within 45 days of the policy effective date stating they do not accept the TypTap Private Flood Policy.

   c. Building sold or removed.

   d. Policy cancelled and rewritten to establish a common expiration date with other insurance coverage.

   e. Duplicate flood policies.

   f. Property closing did not occur.

   g. Policy not required by mortgagee.

   h. Insurance no longer required by mortgagee because property is no longer in a Special Flood Hazard Area because of physical map revision or the structure has been removed from the Special Flood Hazard Area by means of letter of map amendment (LOMA) or letter of map revisions (LOMR).

   i. Mortgage paid off.

   j. Insurance no longer required based on FEMA review of lender's Special Flood Hazard Area determination.

   k. Cancel/rewrite due to misrating, map revision, LOMA or LOMR.

   l. If the "NFIP" reinstates the ability for a consumer to cancel mid-term, we will allow as well.

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8F

**TypTap Insurance Company**                                                                    FLOOD POLICY

| | |
|---|---|
| **Cancellation and Nonrenewal Continued** | 4.  Non-renewal of the **policy**: |

    **a.**  Your **policy** will not be renewed:

        **(1)**  If the community where your covered property is located stops participating in the "NFIP"; or

        **(2)**  If your "building" has been declared ineligible under Section 1316 of the Act.

    **b.**  We may elect not to renew this **policy**:

        **(1)**  We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reason(s) for nonrenewal.

        **(2)**  We shall give at least 120 days' written notice before the expiration of this policy.

**Renewal Notification**

If we elect to renew this **policy**, we will let you know, in writing:

1.  Of our decision to renew this **policy**; and
2.  The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this **policy**.

Proof of mailing will be sufficient proof of notice.

**Duties After Loss**

You must see that the following are done in the event of loss or damage to covered property:

1.  Give prompt notice to us or our agent;
2.  Protect the property from further damage. If repairs to the property are required, you must:
      **a.**  Make reasonable and necessary repairs to protect the property; and
      **b.**  Keep an accurate record of repair expenses;
3.  Cooperate with us in the investigation of a claim;
4.  Prepare an inventory of damaged personal property showing the:
      **a.**  Quantity;
      **b.**  Description;
      **c.**  Age;
      **d.**  Actual cash value; and
      **e.**  Amount of loss.

    Attach all bills, receipts and related documents that justify the figures in the inventory;
5.  As often as we reasonably require:
      **a.**  Show the damaged property;
      **b.**  Provide us with records and documents we request and permit us to make copies;
      **c.**  You or any insured under this **policy** must;
         **(1)**  Submit to examinations under oath and/or recorded statements, while not in the presence of any other insured; and
         **(2)**  Sign the same;
      **d.**  If you are an association, corporation or other entity; any members, officers, directors, partners or similar representatives of the association, corporation or other entity must:
         **(1)**  Submit to examinations under oath and/or recorded statements, while not in the presence of any other insured; and
         **(2)**  Sign the same;
      **e.**  Your agents, your representatives, and anyone engaged with your claim on your behalf, including any public adjusters and anyone insured under this **policy**, other than an insured in **c.** or **d.** above, must:
         **(1)**  Submit to examinations under oath and/or recorded statements, while not in the presence of any insured; and

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8F

**TypTap Insurance Company**                                          **FLOOD POLICY**

| | |
|---|---|
| **Duties After Loss Continued** | **(2)** Sign the same; |
| | **f.** Send to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief: |
| | **(1)** The time and cause of loss; |
| | **(2)** The interests of all insureds and all others in the property involved and all liens on the property; |
| | **(3)** Other insurance which may cover the loss; |
| | **(4)** Changes in title or occupancy of the property during the term of the **policy**; |
| | **(5)** Specifications of damaged buildings and detailed repair estimates; |
| | **(6)** The inventory of damaged personal property described in **4**. above; and |
| | **(7)** Receipts for additional living expenses incurred and records that support the fair rental value loss. |
| **No Benefit to Bailee** | No person or organization, other than you, having custody of covered property will benefit from this insurance. |
| **Loss Payment** | **1.** We will adjust all losses with you. We will pay you unless some other person or entity is named in the **policy** or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in lieu of a proof of loss) and: |
| | **a.** We reach an agreement with you; |
| | **b.** There is an entry of a final judgment; or |
| | **c.** There is a filing of an appraisal award with us, as provided in **Mediation or Appraisal**. |
| | **2.** If we reject your proof of loss in whole or in part you may: |
| | **a.** Accept our denial of your claim; |
| | **b.** Exercise your rights under this **policy**; or |
| | **c.** File an amended proof of loss, as long as it is filed within 60 days of the date of the loss. |
| **Abandonment** | You may not abandon to us damaged or undamaged property insured under this **policy**. |
| **Salvage** | We may permit you to keep damaged insured property after a loss, and we will reduce the amount of the loss proceeds payable to you under the **policy** by the value of the salvage. |
| **Subrogation** | An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. |
| | If an assignment is sought, an insured must sign and deliver all related papers and cooperate with us. |
| **Notice** | If we need access to an insured or claimant or to the insured property, we will provide you or the claimant 48 hours' notice before scheduling a meeting or onsite inspection. You or the claimant may deny access to the property if the notice has not been provided. You or the claimant may waive the 48-hour notice requirement. |

## LIBERALIZATION CLAUSE

If we make a change which broadens coverage under this edition of our **policy** without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the **policy** period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our **policy**.

DocuSign Envelope ID: F9B3116F-6173-4D84-A9EB-2464DE3A0B8E

**TypTap Insurance Company**                                                              **TTIC FLOOD**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT
# COST LOSS SETTLEMENT – TTIC FLOOD POLICY

**A. Eligible Property**

Covered losses to eligible property under Flood Coverage B – Personal Property are settled at replacement cost at the time of the loss.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collector's items and similar articles, whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage B**,** if applicable; or

   d. Any applicable special limits of liability stated in this policy.

2. We will settle the loss as noted above in Paragraph **C.1.** whether or not actual repair or replacement is complete.

All other provisions of this policy apply.

**TTIC SAFP 23 86 01 16**          Includes copyrighted material of Insurance Services Office, Inc., with its permission          **Page 1 of 1**

DocuSign Envelope ID: F9B3116F-6172-4D84-A9EB-2164DE3A0B8F

This page intentionally left blank

This page intentionally left blank